THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* M. C. TOWNSEND, Defendant-Appellant.

(No. 54289;

First District—July 26, 1972.

Michael P. Toomin, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Zenon Forowycz, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ADESKO delivered the opinion of the court:

Defendant, M. C. Townsend, was charged with the crimes of rape and murder. After a jury trial, he was convicted of both offenses and was sentenced to serve concurrent terms of 50 to 100 years for murder and 4 to 20 years for rape. Defendant appeals his convictions and presents the following issues for our review:

(1) Whether an oral statement of the defendant admitting the rape and murder was properly received in evidence;

(2) Whether the trial court made adequate findings of fact and conclusions of law in denying defendant's motion to suppress his confession; and

(3) Whether the defendant was proven guilty beyond a reasonable doubt.

The evidence in this case indicates that on the morning of June 21, 1967, the deceased Elvira Golarza was walking down Franklin Boulevard in Chicago on her way to work. A witness, Mrs. Mary Armstrong, who resided at 3211 W. Franklin Blvd., testified that sometime between 6:45 and 7:00 on the morning in question she looked out from her window and saw the defendant approach Mrs. Golarza, who did not stop but just kept on walking. Defendant walked along with Mrs. Golarza. Mrs. Armstrong was able to identify the defendant as he had been a neighbor of hers.

Robert Watson who lived at 3249 W. Franklin Blvd., testified that at approximately 7:00 on the morning in question, he heard what sounded like a beachball bouncing in his breezeway and after it became very loud he went outside to investigate and discovered Mrs. Golarza lying in the breezeway. He summoned the police. When the police arrived at approximately 7:00 A.M., they found the victim unconscious, beaten about the head and upper torso with her breasts mutilated. They transported Mrs. Golarza to the hospital where she died the next day of her injuries.

The officers investigating the case on June 21, 1967, were told that defendant had just been seen on Franklin Blvd. When a police officer

approached defendant and asked him for identification, defendant started to reach into his pocket as if to get the identification, but then bolted and ran. The officer lost the defendant.

On June 23, 1967, Detective Griffin, a Chicago policeman, was investigating the case when he learned that the defendant might be found at 2322 W. Roosevelt Rd. Detective Griffin obtained a warrant for the arrest of defendant and proceeded to the Roosevelt Road address along with another officer. The officers entered the apartment at 2322 W. Roosevelt Rd. and found the defendant who made a quick move toward a window, but was apprehended.

Defendant was transported to Area 4 Detective Headquarters, and on route, defendant was advised of his constitutional rights. He stated that he understood them. At Detective Headquarters, the constitutional warnings were again repeated, and defendant again indicated that he understood those rights. Defendant then volunteered that the victim had voluntarily had intercourse with him, but that when he had finished the act of intercourse, he noticed a young man standing over them. Defendant stated that he then got up and left. The police later picked up a young man whom defendant identified as the one standing over the victim and himself. When the defendant was informed that this individual had a valid alibi, the defendant confessed to the murder and rape of Mrs. Golarza.

Defendant's initial contention on appeal is that the State violated his Fifth Amendment rights by improperly introducing into evidence his confession of the rape and murder of Elvira Golarza, in contradiction of the United States Supreme Court decision in *Miranda v. Arizona*, 384 U.S. 436. Defendant maintains that he was improperly interrogated after he had indicated his refusal to answer any questions and that his confession should therefore not have been admitted into evidence at trial. Defendant contends that the testimony of a police officer at trial in response to an inquiry as to what defendant said after he was read his rights demonstrated a refusal to answer any further questions. The record does not support this contention. The officer stated:

"When Detective Griffin was through he asked Mr. Townsend if he knew what he had talked about and if he understood what he had said, and he said yes he understood and that he had nothing to say."

The officer went on to say, however, that these were not the exact words of defendant and indicated that in fact the defendant stated something to the effect that "* * * he didn't know anything about it", rather than that he had nothing to say. The record reveals that with no further questioning, defendant offered to tell the officers what happened. At this point defendant was again advised of his constitutional rights, and after acknowledging his understanding of those rights, he proceeded to give

the officer a statement implicating a young man. When that story turned out to be false and defendant was confronted with that fact, he then volunteered to "get it off his chest", and proceeded to give a detailed description of his commission of the crimes in question.

■■ *Miranda* does not prohibit the use of volunteered and un-prompted statements of an accused. The United States Supreme Court held in *Miranda* that:

"Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. * * *. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Miranda v. Arizona,* 384 U.S. 436 at 478.

In the instant case, defendant's voluntary statements, without prompting, indicated that defendant was not refusing to answer further questions.

■■ Defendant further contends that the warnings he received were defective in that they failed to apprise him of his right to have counsel present during any interrogation. Defendant complains of the warning given on route to Police Headquarters, but does not complain of any inadequacy in the warnings given at headquarters and preceding any statement by defendant. *Miranda* requires that a suspect be advised of his right to consult an attorney, to have an attorney present during interrogation, and to have an attorney appointed if he cannot afford one. (*Miranda v. Arizona,* 384 U.S. 471, 473.) The words of *Miranda,* however, do not constitute a ritualistic formula which must be uttered without deviation to be effective. Rather words which convey the substance of the warnings and the required information are sufficient. *People v. Landgham,* 122 Ill.App.2d 9, 22, 257 N.E.2d 484, 491; *United States v. Vanterpool,* 394 F.2d 697, 98, 99 (2d Cir.).

■■ Upon careful examination of the complete record in the instant case, we find that the warnings given defendant before he made any statements explicitly warned him of his right to have counsel present during interrogation and this clearly met the requirements of *Miranda.*

Defendant also contends that he did not knowingly waive his *Miranda* rights. The United States Supreme Court held in *Miranda* that "[a]ny statement given freely and voluntarily without any compelling influences is * * * admissible in evidence * * *. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement." 384 U.S. at 478, 479.

■■ What constitutes a knowing and intelligent waiver of constitutional rights must be determined from all the facts present in the case.

(*People v. Bey*, 45 Ill.2d 535, 259 N.E.2d 800; *People v. Hill*, 39 Ill.2d 125, 233 N.E.2d 367.) In the instant case, defendant was adequately advised of his constitutional rights and defendant clearly stated that he understood the rights explained to him. Defendant makes no claim that any coercive or improper police conduct was employed to obtain oral statements from him. There is no indication that defendant, 30 years of age, was of subnormal intelligence. Defendant also was not unfamiliar with police procedures as he had six previous convictions. We therefore find that defendant's voluntary statement of culpability in the instant case was given only after a knowledgeable and intelligent waiver of his rights.

Defendant next contends that the trial court improperly denied his motion to suppress his confession, without making adequate findings of fact and conclusions of law.

■■■ While it is preferable that there be findings of fact and conclusions of law, the absence of such does not require reversal, if the evidence would sustain the ruling of the trial court notwithstanding the absence of such findings. (*People v. Drury*, 130 Ill.App.2d 798, 268 N.E.2d 460.) It has also been held that where credibility of police officers testifying on a motion to suppress evidence are not in question, the trial court may properly rule on a motion to suppress evidence without making a specific finding of facts. *People v. Holloman*, 46 Ill.2d 311, 263 N.E.2d 7.

■■ In the case at bar, the trial judge made the following findings at the conclusion of the hearing on the motion to suppress defendant's confession:

"The court will say, after hearing all of the evidence that has been produced, and considering all of the evidence observed, all of the witnesses, * * * there is no doubt in the court's mind that the statement that was given to the officers was not the result of physical or mental coercion or physical abuse, and that the defendant was warned of his constitutional rights under the law.

*       *       *

I must say, frankly, I am not one of the people who believe in anything that a police officer says or everything that a State's Attorney or anybody else says, but watching carefully the people here, in my judgment the testimony has been overwhelmingly consistent.

*       *       *

The officers have impressed me by being intelligent in this case. You do not always see this in police officers. I say that these people seem to be a couple of exceptional officers in this testimony here, and I am contrained under what I have said before, to deny your motion to suppress the statement."

The testimony of the officers in the instant case was uncontraverted. The evidence in the record supports the ruling of the trial court and we find that the findings of the trial court were sufficient.

Defendant's final contention on appeal is that he was not proven guilty beyond a reasonable doubt. Defendant was the last person to be seen with the victim before she was attacked. He was seen with her only minutes before her body was found. Defendant was seen to be wearing a black knit shirt on the day of the attack and admitted that he changed that shirt as it had traces of the victim's blood on it. A microanalyst testified that blood of the same type as the victim's was found on the shirt. Defendant confessed to the crime and gave a detailed description of his actions and of the victim, including a description of her injuries. Defendant had not been told anything about those injuries, nor had he been shown any photographs of the victim. Defendant took flight when police officers approached him.

■■■ It is the province of the jury to weigh the evidence, judge the credibility of witnesses and determine the facts in a case. A reviewing court will not set aside a jury's verdict of guilty unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to cause a reasonable doubt as to the guilt of the accused. (*People v. Sumner*, 43 Ill.2d 228, 252 N.E.2d 534; *People v. Kelley*, 29 Ill.2d 53, 193 N.E.2d 21.) After a careful review of the record before us, we find that the defendant was convicted of rape and murder beyond a reasonable doubt.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is hereby affirmed.

Judgment affirmed.

DIERINGER, P. J., and BURMAN, J., concur.