THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHRISTOPHER DICKERSON, Defendant-Appellant.

First District (5th Division)    No. 77-1790

Opinion filed February 16, 1979.—Modified on denial of rehearing April 12, 1979.

James J. Doherty, Public Defender, of Chicago (Sam Majerowicz and Suzanne M. Xinos, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Pamela Louise Gray, and Diane Michel Powell, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial defendant was convicted of robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—1) and sentenced to 120 days of periodic imprisonment and five years probation. On appeal he contends that the trial court erred: (1) in failing to suppress the complaining witness' identification of him where that identification was the direct result of an unlawful arrest, and (2) in failing to state its findings of fact and conclusions of law in denying his motion to suppress the identification.

The following pertinent facts were adduced at trial.

*For the State*
  *Adolph Tang*
As he was walking south on Homan Avenue between Warren Boulevard and Madison Street at approximately 10:30 p.m. on May 17, 1974, "three individuals ran up behind" him. Just after he turned around to face them, they began to attack him. He identified one of these individuals as defendant. Although he could not recall the location of the nearest street light, he testified that the lighting was good and that he was able to observe defendant's face and clothing. Defendant who was wearing a black tuxedo, a silver hat and silver shoes, threw him to the ground and began to hit and kick him. The two other individuals also hit and kicked him "all over my body." During the attack one of the other individuals "snatched a bag" containing a new pair of shoes from him and ran north on Homan Avenue. Defendant and the third assailant continued to fight with him for "more than a minute" and then also ran north on Homan. The attack had lasted for "maybe a few minutes." He got up and ran after the three assailants, hollering for help and for the police. The assailants ran half a block north on Homan to Warren, turned the corner and proceeded east on Warren. He yelled for the police before the assailants had reached the corner of Homan and Warren and while they were still in his sight. When he reached the corner in pursuit a few seconds later, the police had defendant on the ground. A few minutes later the police returned his shoes to him.

On cross-examination he admitted that he lost sight of the assailants for a few seconds when they turned the corner at Homan and Warren and that he did not actually see the police stop them. Although he believed the

police heard him call for help, he admitted that he did not actually have a conversation with the police concerning the attack prior to defendant's arrest.

*Steve Kaplan, Chicago Police Officer*

At approximately 10:30 p.m. on May 17, 1974, he and his partner, Officer Daniel Amidei, were in a Mobil gas station at the corner of Homan Avenue and Warren Boulevard. As he was talking on a phone in the gas station and looking south toward the intersection of Homan and Warren, he "heard a commotion" and observed three individuals running north on Homan across Warren. These individuals were turning in an easterly direction and appeared to be attempting to "cut through the Mobil gas station parking lot." Approximately two or three seconds later he observed Adolph Tang "running behind them yelling for the police and stating that he had been robbed." Tang was 10 or 15 paces behind these men. Defendant and a man identified as Grayland Bobo were running directly toward Kaplan. Tang "yelled to me that those men just robbed him" and pointed to defendant and Bobo. He then asked Tang, "These two?" When Tang replied affirmatively he ordered the two men to halt. At the time of his arrest, defendant was wearing a tuxedo and silver sequined platform shoes.

His partner pursued the third individual east on Warren and arrested him under a porch. This third individual was in possession of a pair of shoes which Tang identified as being seized from him.

On cross-examination he admitted that he did not actually see the robbery in progress and that before he stopped defendant and Bobo, Tang told him only "that they had robbed him."

*For the Defendant*

*Daniel Amidei, Chicago Police Officer*

He basically corroborated the testimony of Officer Kaplan, his partner, concerning the incident at Homan Avenue and Warren Boulevard on the evening of May 17, 1974, adding that he was not actually present at the moment Kaplan arrested defendant. He admitted that he told a grand jury on July 19, 1974, that he had observed several individuals "fleeing from a porch" and that Tang thereafter announced that those individuals had just robbed him. This grand jury testimony was, he admitted, inaccurate since he did not actually see anyone flee from a porch and because "in the grand jury I wasn't sure of the time sequence." He explained, however, that he had "apprehended a subject underneath the porch" and believed "that's where the mistake came in" during his grand jury testimony. He also admitted that his police report was incorrect when it stated that before he and Kaplan pursued the three fleeing individuals Tang had told them that he had been attacked and

robbed while walking home from the "L." In the police report he had stated that defendant was arrested at 15 N. Homan.

*Murray Greenberg, Investigator, Cook County Public Defender's Office*

He visited the corner of Homan Avenue and Warren Boulevard and ascertained that the entrance to a day-care center is located at 15 N. Homan while a Mobil gas station is located at 43 N. Homan.

*Christopher Dickerson on his own behalf*

At approximately 10 p.m. or 10:30 p.m. on May 17, 1974, he was walking south on the east side of Homan Avenue and was just crossing Warren Boulevard when he observed "an incident take place" 10 or 15 feet away. At that time he observed a man later identified as Adolph Tang approach Officer Kaplan, shout "something about let me hit this guy" and state that he had been robbed. Two other men ran by him, one down Warren and the other down Homan. He started walking back north because "it looked like what was up ahead was lots of trouble." Although he was "moving kind of fast," he was not running. He did not kick, beat or rob Tang.

On cross-examination he admitted that he was arrested about a half block east of Homan on Warren and that he was wearing a tuxedo and silver sequined shoes at the time of his arrest.

OPINION

Defendant first contends that the trial court erred in failing to suppress the complaining witness' identification of him. He argues that the identification was the direct result of an unlawful arrest and must, therefore, be suppressed.

■■ ■ The State initially responds that defendant's failure to raise this contention in his written motion for a new trial precludes review of the issue. It is generally true that where the grounds for a new trial are stated in writing only the errors alleged therein are preserved for appeal and all other errors are waived. (*People v. Foster* (1976), 43 Ill. App. 3d 490, 356 N.E.2d 1288.) However, the waiver principle "is not an ironclad rule." (*People v. Norris* (1972), 8 Ill. App. 3d 931, 935, 291 N.E.2d 184, 187.) In the instant case we choose to relax the waiver rule. The issue concerning the witness' identification of defendant was adequately presented to the trial court by defendant's motion to suppress. Because the defendant may possibly have been prejudiced if his contention is proven correct, we will consider the issue. See *People v. Lott* (1975), 33 Ill. App. 3d 779, 338 N.E.2d 434; *People v. Nunez* (1974), 24 Ill. App. 3d 163, 320 N.E.2d 462.

■■ A warrantless arrest is justified where the arresting officer has a reasonable basis for believing that the person to be arrested has committed a criminal offense. (Ill. Rev. Stat. 1973, ch. 38, par. 107—2(c);

*People v. Wright* (1969), 42 Ill. 2d 457, 248 N.E.2d 78.) Reasonable cause does not require evidence sufficient to convict, but requires only that a reasonable and prudent person having the knowledge possessed by the arresting officer at the time would believe the person to be arrested had committed a crime. (*People v. Doss* (1970), 44 Ill. 2d 541, 256 N.E.2d 753.) In determining whether reasonable cause for the arrest did exist, we must not be unduly technical, and must recognize the practical considerations of everyday life on which reasonable people, rather than legal technicians, act. (*People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280.) Furthermore, we recognize that police officers must often act quickly and that the reasonableness of their actions should be judged in light of their responsibility to prevent crime and catch criminals. *People v. Robinson* (1976), 62 Ill. 2d 273, 342 N.E.2d 356.

■ After a careful review of the record before us, we believe that reasonable grounds for the arrest did exist, and, consequently, that the arrest was lawful. Tang, the complaining witness, testified that the police officers certainly heard his cries for help as he chased his assailants. Officer Kaplan testified that he observed Tang running 10 or 15 paces behind three individuals and "yelling for the police." Officer Amidei also testified that he observed three individuals being chased by another man who was "yelling." Kaplan immediately stopped two of the fleeing individuals, one of whom was defendant. The record clearly establishes that the police officers were confronted with what appeared to be a dangerous and volatile situation requiring immediate action. Considering the totality of the circumstances facing the police officers, it is clear that they had reasonable cause to believe defendant had committed a crime. Accordingly, we find that the arrest was proper and that defendant's first contention is without merit.

■■ Defendant also contends that the trial court erred in failing to state its findings of facts and conclusions of law when denying the motion to suppress the complaining witness' identification. Defendant supports this contention with reference to section 114—12(e) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 114—12(e)), which provides that:

> "The order or judgment granting or denying the motion shall state the findings of facts and conclusions of law upon which the order or judgment is based."

However, it is clear that the absence of such findings of facts and conclusions of law does not require reversal where the record sustains the order of the trial court. (*People v. Drury* (1971), 130 Ill. App. 2d 798, 268 N.E.2d 460; *People v. Sullivan* (1972), 7 Ill. App. 3d 417, 287 N.E.2d 513.) The trial court here, in denying defendant's motion to suppress the complaining witness' identification, obviously based its ruling upon a

finding of a lawful arrest. Defendant argues that the record does not support this finding. As we have held herein, the record clearly does establish that the police officers had probable cause to make the arrest and that the arrest was lawful. Accordingly, the failure of the trial court to state findings of facts and conclusions of law when denying the motion to suppress the resulting identification by the complaining witness does not require reversal.

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.