(No. 23359.—

THE PEOPLE *ex rel.* JOSEPH J. RICE, Director of Finance, Appellee, *vs.* THE WILSON OIL COMPANY *et al.*—(THE ALLIANCE CASUALTY COMPANY, Appellant.)

*Opinion filed October 14, 1936—Rehearing denied Dec. 2, 1936.*

WENDELL H. SHANNER, (CHARLES LAUGHLIN, of counsel,) for appellant.

OTTO KERNER, Attorney General, (EARL B. DICKERSON, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant seeks to reverse a judgment of the circuit court of Cook county against it for $2000, the penalty on a bond executed by it as surety for the Wilson Oil Company, a corporation, executed under the provisions of section 3 of the Motor Fuel Tax law of 1929, as amended. The appeal is direct, as a constitutional question is raised.

The Wilson Oil Company, a corporation of Illinois, on or about August 10, 1931, made an application to the Department of Finance of the State of Illinois in accordance with the provisions of the Motor Fuel Tax law of 1929 as amended in 1931, (Cahill's Stat. 1933, chap. 95a, par. 81,) for a license as a distributor of motor fuel, and, complying with section 3 of said law and the ruling of the department, delivered a surety bond executed by appellant in the sum of $2000, which, among other things, provided that if the Wilson Oil Company, principal, as licensee, engaged in the business as a distributor of motor fuel, should pay the State

of Illinois all moneys becoming due the State under the provisions of the Motor Fuel Tax law by reason of the sale or use of motor fuel by said principal, together with all penalties and interest accruing thereon, then the obligation of the bond shall be void, otherwise to remain in full force and effect. A license was duly issued to the Wilson Oil Company, and while the bond was in full force it became indebted to the State of Illinois for motor fuel taxes collected under said act in the sum of $17,969.15, and upon its failure to pay said indebtedness appellee brought suit against the Wilson Oil Company and appellant to recover the $2000 penalty on said bond. Appellant defended on the ground that section 3 of said act as amended in 1931 is unconstitutional and therefore action on the bond can not be maintained. The trial court dismissed the suit as to the oil company and entered judgment against appellant in the sum of $2000.

On this review two principal questions are presented: First, the validity of section 3 of the Motor Fuel Tax law of 1929 as amended in 1931, and second, assuming the act to be invalid, is appellant estopped from setting up the invalidity of the bond?

The grounds of the claimed invalidity of section 3 of the Motor Fuel Tax law as amended in 1931 are, that it does not provide sufficient standards to guide the Department of Finance in fixing the penalty of the bond required of a distributor of motor fuel; that the phrase "amount of business reasonably expected" is not a sufficiently definite standard to guide the Department of Finance in fixing the penalty on the bond but requires the Department of Finance to guess, conjecture and speculate concerning future events, and that the Department of Finance need only "take into consideration," but is not compelled to act upon, its or another's expectation of the amount of business reasonably expected in fixing the amount of the bond, and so the act was incomplete when it left the legislature, resulting in a

delegation of legislative power to an administrative department or officer.

Section 3, after providing for the application for and issuance of a license to act as a distributor of motor fuels, also requires that "the applicant shall also file with the department a bond in an amount not to exceed $5000 on a form to be approved by and with a surety or sureties satisfactory to the department conditioned upon said applicant paying to the State of Illinois all moneys becoming due by reason of the sale or use of motor fuel by the applicant, together with all penalties and interest thereon. The department shall fix the penalty of such bond in each case taking into consideration the amount of business reasonably expected to be handled by him, [the applicant,] and the penalty fixed by the department shall be such, as in its opinion, will protect the State of Illinois against failure to pay the amount hereinafter provided on motor fuel sold and used."

In determining the constitutionality of section 3 complained of, it is necessary to consider the entire act to arrive at the legislative intent. All its sections are to be construed together in the light of the general purpose and plan as therein expressed. (*Burns* v. *Industrial Com.* 356 Ill. 602.) The evil to be remedied and the object to be attained must also be considered. (*Coon* v. *Doss,* 361 Ill. 515.) It is a familiar rule that all doubt and uncertainty as to the constitutionality of the section should be resolved in favor of its validity, and if two constructions of the act are equally available, one of which renders it void and the other valid, the latter construction will be adopted. *Great United Benefit Ass'n* v. *Palmer,* 358 Ill. 276; *People* v. *Anderson,* 355 id. 289; *People* v. *Stitt,* 280 id. 553; *People* v. *McBride,* 234 id. 146.

In considering whether section 3 was complete when it left the legislature or incomplete, resulting in the delegation of legislative power, the test is whether the provision

is sufficiently definite and certain to enable one reading it to know his rights and obligations. (*Vallat* v. *Radium Dial Co.* 360 Ill. 407.) If section 3 delegates to the Department of Finance power to make the law, which involves a discretion as to what the law shall be, it violates article 3 of the constitution. If, on the other hand, it but confers authority or discretion on that department, to be exercised under the limits of the act, as to its execution, it is valid. Sutherland on Stat. Const. sec. 68; *Klafter* v. *Board of Examiners of Architects,* 259 Ill. 15; *People* v. *Grand Trunk Western Railway Co.* 232 id. 292; *Spiegler* v. *City of Chicago,* 216 id. 114.

The General Assembly cannot deal with the details of each particular case that may arise in the administration of an act but must necessarily leave such to the reasonable discretion of administrative officers, and the exercise of such discretion does not constitute the exercise of legislative power. (*Italia America Shipping Corp.* v. *Nelson,* 323 Ill. 427; *Board of Education* v. *Board of Education,* 314 id. 83; *Mitchell* v. *Lowden,* 288 id. 327; *State* v. *Illinois Central Railroad Co.* 246 id. 188.) An act which does not lay down rules and definitions by which the administrative officer may be guided in the exercise of the discretion vested in him is incomplete. (*People* v. *Federal Surety Co.* 336 Ill. 472; *City of Chicago* v. *Matthies,* 320 id. 352; *People* v. *Sholem,* 294 id. 204.) An administrative officer empowered to issue and revoke licenses to engage in a business or profession necessarily exercises quasi-judicial powers in determining whether a license shall be issued or revoked, but such exercise of power is but incidental to the duty of administering the law relating to the regulation of a particular business or calling and does not constitute the exercise of judicial power within the prohibition of the constitution. *People* v. *Stokes,* 281 Ill. 159; *People* v. *Brady,* 268 id. 192; *People* v. *Apfelbaum,* 251 id. 18; *Klafter* v. *Board of Examiners of Architects, supra.*

The cases mainly relied upon by appellant to support its contention that section 3 of the act is invalid are *People* v. *Beekman & Co.* 347 Ill. 92, and *People* v. *Federal Surety Co. supra.* In those cases provisions of the Securities act which provided for a bond by one wishing to engage ·in the sale of securities, such bond to be for not less than $2000 nor more than $50,000, conditioned as provided in the act, with terms and in form to be approved by the Secretary of State and authorizing the inclusion of other terms not specified in the act, was held invalid as vesting discretionary power in an administrative officer without properly defining the limitation under which his discretion was to be exercised. Under that act the fixing of the amount of the bond was left to the unregulated decision of the Secretary of State. He was authorized to fix the bond without any consideration of the amount of business to be covered by the bond or definition in the act of what constitutes financial responsibility, while the bond in this case is to be fixed according to the probable amount of tax accruing to the State. Though necessarily estimated, it could be fixed in no other manner, even if the General Assembly had attempted to prescribe the penalty in detail.

It is patent that the purpose of the legislature in passing the Motor Fuel Tax law and its amendments was to raise revenue and to provide a method of safeguarding the State in the collection of that revenue by providing that those to whom a license was granted to sell motor fuel, and on whom the act placed the duty of collecting the tax, should execute a bond to safeguard the State from loss of that tax by the failure of a licensee to account for and pay the State the tax collected. The legislature could not determine the amount of the bond required to safeguard the State from each distributor, for the amount of tax collected by the different distributors would, necessarily, not be the same. Nor can the amount of such bond be more than estimated, particularly on first application for license.

To have directed the fixing of the bond at an arbitrary amount or by any more definite measure would be likely to result either in loss to the State or in placing on the distributor an unnecessary burden. The purpose of the act is to secure the payment of the tax collected and nothing more. By no human agency can the amount of a bond to secure the payment of such tax be more than estimated. The distributor is dealing directly with the State. The department must be allowed to exercise some discretion in determining the amount of the bond in such a case. The act provides inquiry into such facts as might aid in such determination. To obviate any inequality in the requirement of a bond and still safeguard the State, some method by which the Director of Finance may ascertain, as nearly as possible, the number of gallons each distributor would likely sell each month is necessary. The provision that "the department shall fix the penalty of such bond in each case taking into consideration the amount of business reasonably expected to be handled by him [the applicant] and the penalty fixed by the department shall be such, as in its opinion, will protect the State of Illinois against failure to pay the amount hereinafter provided on motor fuel sold and used," must be held to be but the vesting of a necessary discretion in the department. It is required that the applicant furnish such information as the department deems necessary, and from this information, and the necessary estimate of the tax resulting from business to be done, the amount of the bond is determined.

Appellant's application appears in the record. It shows that it operated one bulk plant and four retail outlets. It is, under the law, required to settle with the State monthly. It cannot be said that the act is invalid as delegating legislative or judicial powers to the department, nor that the amount fixed in the bond was an unreasonable exercise of the administrative discretion vested in the department. Like views are held by courts of last resort of sister States.

*Argo Oil Co.* v. *Secretary of State*, 274 Mich. 47; *Sheppard* v. *Owl Refining Co.* 68 S. W. (2d) (Tex.) 1101; *Gross* v. *Commonwealth,* 256 Ky. 19, 75 S. W. (2d) 558.

These views concerning the constitutionality of the act render unnecessary a discussion of other points raised.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*