(No. 52943.—

DALE CHASTEK, Appellee, v. JOAN ANDERSON *et al.*, Appellants.

*Opinion filed January 20, 1981.*

SIMON, J., took no part.

Tyrone C. Fahner and William J. Scott, Attorneys General, of Springfield (Paul J. Bargiel and Patricia Rosen,

Assistant Attorneys General, of Chicago, of counsel), for appellants.

Cassiday, Schade & Gloor, of Chicago (A. Jeffrey Seidman, Rudolph G. Schade, Jr., and Ann C. Standlee, of counsel), for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

In the circuit court of Cook County, plaintiff, Dale Chastek, sought a permanent injunction restraining the Department of Registration and Education (Department) from conducting a hearing against him on a pending complaint. Plaintiff and the Department each filed a motion for summary judgment. The trial court granted plaintiff's motion, finding the statute under which he was charged by the Department invalid, and issued a permanent injunction restraining the Department from conducting a hearing based upon its complaint.

The issues are (1) whether section 7(11) of "An Act to regulate the practice of dental surgery and dentistry ***" (Ill. Rev. Stat. 1977, ch. 111, par. 2222(11)) is vague, thereby depriving plaintiff of his constitutional right to due process, and (2) whether "unprofessional conduct" under the statute includes conduct of the type alleged against plaintiff.

The facts are not in dispute. On August 31, 1979, the Department filed what we will refer to as a three-count complaint against plaintiff, a registered dentist and orthodonist, charging him with unprofessional conduct in the treatment of three patients. The first count alleged that plaintiff rendered improper treatment to one patient for nine years which resulted in a condition known as "cross bite." The improper treatment asserted included failure to take cephalometric head plates and failure to advise necessary extraction of certain teeth prior to the placing of braces. The second count alleged that plaintiff rendered

improper treatment to another patient for eight years, including failure to take cephalometric head plates, improper placement of a retainer which interfered with the consumption of food, and failure to provide dental records to the dentists who assumed subsequent treatment of the patient. The third count alleged improper treatment of another patient for eight years which resulted in a malocclusion. The improper treatment asserted in connection with this patient included failure to take cephalometric head plates and failure to order oral surgery when necessary. The Department sought to suspend or revoke plaintiff's dentist and orthodonist licenses on the ground that the above acts and omissions constituted "unprofessional conduct" under section 7(11) of the statute.

Prior to a hearing on the Department's complaint, plaintiff sought and was issued a temporary restraining order against defendant in the trial court on November 7, 1979. On December 21, the trial court found the statute void and entered a permanent injunction preventing the Department from conducting a hearing to suspend or revoke plaintiff's licenses.

The statute in question provides:

> "The Department of Registration and Education may refuse to issue, may suspend or may revoke a license for any one or any combination of the following causes:
> * * *
> 11. Improper, unprofessional or dishonorable conduct." (Ill. Rev. Stat. 1977, ch. 111, par. 2222.)

Plaintiff contends that the statutory phrase allowing license revocation for improper, unprofessional or dishonorable conduct is vague, thereby depriving him of his constitutional right to due process. He argues that section 7(11) of the statute affords him no advance notice of the type of acts that constitute "unprofessional conduct."

Plaintiff cites several cases in which the courts have not allowed license revocations. (*Megdal v. Oregon State Board*

*of Dental Examiners* (1980), 288 Or. 293, 605 P.2d 273; *Tuma v. Board of Nursing* (1979), 100 Idaho 74, 593 P.2d 711; *State Board of Dentistry v. Blumer* (1977), 78 Mich. App. 679, 261 N.W.2d 186; *Lester v. Department of Professional & Occupational Regulations* (Fla. App. 1977), 348 So. 2d 923.) None of these cases, however, found a statute allowing license revocation for unprofessional conduct to be unconstitutional. *Blumer* disallowed license revocation because the board involved did not further define unprofessional conduct. The other cases disallowed license revocation because the statute in question did not afford notice that the conduct with which the doctors were charged fell within the purview of the statute. In none of these cases, however, did the acts alleged reflect on the person's fitness to practice his profession. In fact, several of these cases imply that the statutes in question did place the person on notice that conduct relating to his fitness to practice would fall under the statute. For example, in *Megdal*, in which a dentist was charged with making intentional misrepresentations to his malpractice insurer, the court stated:

> "It might be agreed that the term [unprofessional conduct] covers conduct in the course of rendering the professional service on the one hand, and on the other that it excludes the licensee's purely private affairs unrelated to any relevant professional qualification or performance. But between these two poles, there may be questions how far 'unprofessional conduct' extends to financial arrangements or to mixing professional with other relationships." 288 Or. 293, 315, 605 P.2d 273, 284.

Similarly, in *Tuma*, where a nurse was charged with discussing alternative treatments with a patient, the court stated, "With respect to [the nurse], however, there appears to be no contention whatever that she is unfit to nurse ***." (100 Idaho 74, 80, 593 P.2d 711, 717.)

In contrast, the alleged conduct in the instant case specifically reflects on the plaintiff's fitness to practice his profession.

This court has held that a statute does not violate the due process clauses of the United States or Illinois constitutions, on grounds of vagueness, if the duty imposed by the statute is prescribed in terms definite enough to serve as a guide to those who must comply with it. (*E.g., Stein v. Howlett* (1972), 52 Ill. 2d 570, 579-80; *Jaffe v. Cruttenden* (1952), 412 Ill. 606, 609.) Many courts have upheld the validity of similar statutes providing for license revocation against constitutional challenges based on vagueness. *Shea v. Board of Medical Examiners* (1978), 81 Cal. App. 3d 564, 574, 146 Cal. Rptr. 653, 659-60 (unprofessional conduct); *Buhr v. Arkansas State Board of Chiropractic Examiners* (1977), 261 Ark. 319, 322, 547 S.W.2d 762, 764, *en banc* (gross immorality and unprofessional conduct); *Richardson v. Florida State Board of Dentistry* (Fla. App. 1976), 326 So. 2d 231, 233 (misconduct which would bring discredit upon the dental profession); *Hoke v. Board of Medical Examiners* (W.D.N.C. 1975), 395 F. Supp. 357, 358 (grossly immoral conduct); *Martinez v. Texas State Board of Medical Examiners* (1972), 476 S.W.2d 400, 404 (grossly unprofessional or dishonorable conduct); *Board of Medical Examiners v. Mintz* (1963), 233 Or. 441, 446-49, 378 P.2d 945, 947-49 (unprofessional or dishonorable conduct); *Reyburn v. Minnesota State Board of Optometry* (1956), 247 Minn. 520, 523-24, 78 N.W.2d 351, 355 (unprofessional conduct); *Bell v. Board of Regents* (1946), 295 N.Y. 101, 108-111, 65 N.E. 2d 184, 187-89 (unprofessional conduct); *In re Cherry* (1942), 289 N.Y. 148, 158, 44 N.E.2d 405, 411 (unprofessional conduct); *Walker v. Corwin* (1941), 210 Minn. 337, 340, 300 N.W. 800, 801 (gross moral or professional misconduct); *Warnshuis v. State Board of Registration in Medicine* (1938), 285 Mich.

699, 703-04, 281 N.W. 410, 411 (grossly unprofessional and dishonest conduct); *Sapero v. State Board of Medical Examiners* (1932), 90 Colo. 568, 574-75, 11 P.2d 555, 557-58 (immoral, unprofessional or dishonorable conduct); *Ramsay v. Shelton* (1928), 329 Ill. 432, 444 (unprofessional or dishonorable conduct).

Plaintiff argues that *Shea, Martinez, Richardson, Reyburn, Cherry* and *Warnshuis* are distinguishable in that the statutes involved have language defining unprofessional conduct. Although these cases involve statutes with some definitional verbiage, the additional language was not utilized by the courts in arriving at the conclusion that the doctors' actions constituted unprofessional conduct. Consequently, the notice to persons involved that their actions fell under the ambit of the statute was no greater than if the additional language were absent. For example, in *Shea v. Board of Medical Examiners* (1978), 81 Cal. App. 3d 564, 146 Cal. Rptr. 653, the court upheld the revocation of a physician's certificate by the State Board of Medical Examiners for unprofessional conduct. The statute defined unprofessional conduct as gross immorality, and the commission of any act involving moral turpitude, dishonesty or corruption. The court found that Dr. Shea's conduct did not fall within any act specified by the statute. The court held, however, that it is unnecessary for a statute to enumerate specific acts which constitute unprofessional conduct. It analyzed the statute in terms of its purpose, which was to assure the high quality of medical practice. The court then held that, although unprofessional conduct should not be given an overly broad connotation, "it must relate to conduct which indicates an unfitness to practice medicine." 81 Cal. App. 3d 564, 575, 146 Cal. Rptr. 653, 660.

Similarly, in *Board of Medical Examiners v. Mintz* (1963), 233 Or. 441, 378 P.2d 945, the Oregon Supreme Court revoked a physician's license for unprofessional conduct. The statute outlined several grounds for license revo-

cation, one of which was unprofessional conduct. Oregon Revised Statutes, section 677.010(L), provided that unprofessional conduct or dishonorable conduct was conduct unbecoming a person licensed to practice medicine or detrimental to the best interest of the public. Yet, the defining language of the statute was not the factor that gave the physician notice that his conduct, administering drugs for the purpose of performing an abortion, was unprofessional. The court held, "The fact that it is impossible to catalogue all of the types of professional misconduct is the very reason for setting up the statutory standard in broad terms and delegating to the board the function of evaluating the conduct in each case." 233 Or. 441, 448, 378 P.2d 945, 948.

In *Reyburn v. Minnesota State Board of Optometry* (1956), 247 Minn. 520, 523-24, 78 N.W.2d 351, 355, the Minnesota Supreme Court affirmed an order denying an optometrist an injunction that would have prevented a hearing to suspend or revoke his license. The statute allowed suspension or revocation for unprofessional conduct, which was defined as any conduct of a character likely to deceive or defraud the public. The court held " 'unprofessional conduct' is of itself, without amplification, a sufficiently definite ground upon which the board may revoke or suspend a license." 247 Minn. 520, 525, 78 N.W.2d 351, 356.

The rationale in the cases upholding these statutes is that it is impossible to categorize all the acts constituting terms such as "unprofessional conduct" or "gross immorality." Further, terms such as "unprofessional conduct" are susceptible to common understanding by the members of the profession. When combined with the legislative purpose of protecting the public from people unfit to practice, the term "unprofessional conduct" provides fair notice to licensed professionals and is not unconstitutionally vague.

The statute at issue lists 20 separate grounds for which

a dentist can have his license revoked, one of which is un-professional conduct. The principal purpose of the statute is to protect the health, safety and welfare of the public. Section 1a of the statute (Ill. Rev. Stat. 1977, ch. 111, par. 2202) provides:

> "The practice of dentistry in the State of Illinois is hereby declared to affect the public health, safety and wel-fare and to be subject to regulation and control in the pub-lic interest. It is further declared to be a matter of public interest and concern that the dental profession merit and receive the confidence of the public and that only qualified persons be permitted to practice dentistry in the State of Illinois. This Act shall be liberally construed to carry out these objects and purposes."

The meaning attached to a statutory provision is de-rived from an examination of the language of the statute and its purpose. (*Miller v. Department of Registration & Education* (1979), 75 Ill. 2d 76, 81.) Thus, plaintiff should be put on notice that he could have his license revoked for unprofessional conduct that is harmful to the health, safety and welfare of the public. We are not here faced with one alleged act of negligence. In this case, plaintiff is alleged to have committed repeated negligent acts. Clearly, repeated acts of negligence by a dental practitioner toward his patients are actions that endanger the health, safety and welfare of the public and, therefore, constitute unpro-fessional conduct. It is unreasonable to presume that a dentist is not apprised of the possibility his license could be in jeopardy for repeated acts of incompetent treatment.

Moreover, the statute necessarily must be broad be-cause it would be impossible for the statute to catalogue specifically every act of unprofessional or dishonorable conduct which would justify the refusal or revocation of a license. (*People ex rel. State Board of Health v. Apfelbaum* (1911), 251 Ill. 18, 22-23.) See *Wegmann v. Department of Registration & Education* (1978), 61 Ill. App. 3d 352,

where a dentist was suspended for inhaling nitrous-oxide gas during office hours, thereby rendering himself senseless.

Plaintiff contends that, although the acts alleged against him may constitute negligence and professional malpractice, the term "unprofessional conduct" applies only to wilful acts on his part. Plaintiff has not cited any authority nor has our research revealed any support for this allegation. Plaintiff also argues that the legislature intended to exclude negligence and malpractice as grounds for license revocation. In support of this argument, he points to other Illinois statutory provisions that specifically use terms such as "malpractice" or "incompetence." His examples include optometrists (Ill. Rev. Stat. 1977, ch. 111, par. 3814(c)), which refers to "gross malpractice"; physicians (Ill. Rev. Stat. 1977, ch. 111, par. 4433(27)), which refers to "professional incompetence"; professional engineers (Ill. Rev. Stat. 1977, ch. 111, par. 5124(2)), which refers to "gross negligence, incompetence or misconduct"; and psychologists (Ill. Rev. Stat. 1977, ch. 111, par. 5316(2)), which refers to "gross negligence." According to plaintiff, if the legislature had intended to allow a dentist's license to be revoked for repeated negligence, the statutory language would have specifically reflected that intent.

In ascertaining legislative intent, the entire statute must be considered (*People ex rel. Morrison v. Sielaff* (1974), 58 Ill. 2d 91, 93) as well as giving effect to "the evil to be remedied and the object to be attained" (*People ex rel. Simpson v. Funkhouser* (1944), 385 Ill. 396, 403). When section 7(11) of the statute is considered in light of the goal of providing competent dental treatment for the benefit of the health, safety and welfare of the public, the legislative purpose would be frustrated if the statute did not encompass repeated acts of negligence. Further, to

conclude that the legislature intended to suspend or revoke the license of other professionals for malpractice or incompetence, while excluding dentists, would create an anomalous situation.

We therefore hold that section 7(11) of the statute (Ill. Rev. Stat. 1977, ch. 111, par. 2222(11)) is not unconstitutionally vague and that repeated acts of negligence may constitute unprofessional conduct within the meaning of the statute.

For the above stated reasons, the judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*

MR. JUSTICE SIMON took no part in the consideration or decision of this case.